957 So.2d 305 (2007)
STATE of Louisiana, Appellee
v.
Labontay Rene YOUNGBLOOD, Appellant.
No. 41,976-KA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2007.
*307 Louisiana Appellate Project, By: Mark O. Foster, for Appellant.
P. Joseph Carmouche, District Attorney, Tommy J. Johnson, Brady D. O'Callaghan, Damion D. Kervin, Assistant District Attorneys, for Appellee.
Before GASKINS, PEATROSS and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal by Labontay Rene Youngblood arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. After a jury trial, Youngblood was found guilty of attempted aggravated arson, a violation of La. R.S. 14:27 and 14:51. He subsequently was charged by bill of information as a third felony habitual offender. Following his adjudication, he was sentenced to 20 years' imprisonment at hard labor, which Youngblood appeals. For the following reasons, Youngblood's conviction and sentence are affirmed.

FACTS
As stated, Youngblood was charged with attempted aggravated arson, and a trial of the matter was conducted. At his trial, Verdia Smith, the victim, testified. Smith, a 73-year-old widow, lived at 514 Coon Street in the Stoner Hill neighborhood of Shreveport for over 50 years. Smith had known Youngblood, who was 38 years old at the time of the crime, all of his life. Youngblood's mother also lived on Coon Street, in a house located one house down *308 from Smith's house. According to Smith, some of her neighbors resented that her house was painted free of charge by a charitable organization in May 2005.
On the morning of June 3, 2005, Smith was awakened by the sound of a barking dog sometime between the time of 3:30 and 4:00 a.m. She looked out her back bedroom window and saw Youngblood riding a bicycle in front of her house on the well-lit street. There was a black bag hanging from his handle bars, and nobody else was outside. Smith then looked out her front door. She watched as Youngblood pedaled his bicycle into his mother's yard, turned and went around the back of the house. Right after Youngblood disappeared from her sight, Smith heard a "bam, bang" sound on her house. She heard another one a few seconds later. Smith did not go outside because of the time of morning and she was alone. She attempted to call the police, but her phone would not work because a recent call had apparently not been properly disconnected.
Later that morning about 7:00 a.m., Smith finally was able to contact the police. The fire department was dispatched to the scene, and Shreveport Fire Department Investigator Russell Moon investigated. He found a liquor bottle and two pieces of rag containing an ignitable liquid outside the back of Smith's house near the northwest corner. Specifically, one piece of rag was located in the bottle and the other piece of rag was on the ground near the bottle and near the side of the house both pieces of rag were scorched as if they had been burned. Smith identified Youngblood to the investigators. Corporal Tommy Rachal of the Shreveport Police Department testified that the sole fingerprint lifted from the bottle belonged to Youngblood.
The 12-person jury rendered a unanimous verdict of guilty as charged of attempted aggravated arson against Youngblood. Thereafter, Youngblood was adjudicated a third felony habitual offender. His motion for post-verdict judgment of acquittal was denied. After a sentencing hearing, the trial court sentenced Youngblood to serve 20 years' imprisonment at hard labor, and this appeal by Youngblood ensued.

DISCUSSION

Sufficiency of the Evidence
In his sole assignment of error, Youngblood argues that the trial court erred in finding the evidence sufficient to convict him of attempted aggravated arson. Specifically, Youngblood argues that the evidence against him was largely circumstantial and insufficient for conviction. We disagree.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cummings, XXXX-XXXX (La.02/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App. 2d Cir.08/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.09/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, XXXX-XXXX (La.10/04/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, XXXX-XXXX (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's *309 decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.08/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App. 2d Cir.09/25/98), 719 So.2d 610, writ denied, 1998-2723 (La.02/05/99), 737 So.2d 747.
When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson. State v. Davis, XXXX-XXXX (La.05/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994); State v. Owens, supra.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.05/08/96), 674 So.2d 1018, writ denied, XXXX-XXXX (La.11/15/96), 682 So.2d 760, writ denied, XXXX-XXXX (La.06/26/98), 719 So.2d 1048.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.04/12/96), 677 So.2d 1008, writ denied, XXXX-XXXX (La.02/21/97), 688 So.2d 520. Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La.App.2d Cir.04/08/96), 672 So.2d 428, writ denied, XXXX-XXXX (La.10/31/97), 703 So.2d 12; State v. Miller, 561 So.2d 892 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (1990). Fingerprint evidence has been upheld as sufficient to sustain a conviction. State v. Grissom, 467 So.2d 858 (La.App. 2d Cir.1985).
Aggravated arson is the intentional damaging by any explosive substance or the setting fire to any structure, watercraft, or movable whereby it is foreseeable that human life might be endangered. La. R.S. 14:51. A conviction of an attempted offense must rest upon sufficient proof that the offender actively desired to cause the proscribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose and tending directly toward the accomplishing of his object. See La. R.S. 14:27; State v. Browhow, 41,686 (La.App.2d Cir.12/13/06), 945 So.2d 890. Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances and the actions of the defendant. State v. *310 Graham, 420 So.2d 1126 (La.1982); State v. Knowles, 598 So.2d 430 (La.App. 2d Cir.1992). The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Browhow, supra.
Here, we conclude that Youngblood's conviction of attempted aggravated arson is supported by the record. After viewing the facts established by the direct evidence and inferred from the circumstances established by that evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of attempted aggravated arson proven beyond a reasonable doubt. As stated, Off. Moon investigated the crime scene at Smith's home and testified at trial. He opined that the items he found at the scene of the crime appeared to be pieces of a firebomb commonly known as a "Molotov cocktail," which is usually a glass bottle containing ignitable or combustible liquid in which a rag is used as a wick. When the rag is lit and thrown at or inside a house, the liquid is spread and sets the house and its contents on fire. Moon observed that Smith's house had scorch and ricochet marks between the two back windows. A flaming liquid appeared to have run down and burned an area of the house. He opined that the location of the marks indicated the target of the firebomb was Smith's window. Moon believed that if the firebomb had gone through the window, the resultant fire and smoke would have quickly spread, causing extensive damage to Smith's old wooden house and immediate danger to her life.
Furthermore, Smith's account of the events that morning and her identification of Youngblood also support his conviction. She saw Youngblood on the street in front of her house in the early morning hours with a bag hanging from his bicycle. Nobody else was outside. Almost immediately after Youngblood disappeared from her sight around the back of his mother's house (thereby moving into a position from which he could throw a bottle at her house), the victim heard a noise and/or noises at the back of her house. The next morning, the pieces of an ignited firebomb were found outside the back of her home near the northwest cornerthe wall had scorch and ricochet marks. Further, Smith was well acquainted with Youngblood, having known him his entire life, thus explaining her immediate recognition of him. The record shows that she never equivocated in her identification of him which she made initially to the investigator, before Youngblood's fingerprint was even identified on the bottle.
Additionally, the sole fingerprint on the bottle belonged to Youngblood. Although Youngblood raised questions regarding the conclusiveness of the fingerprint evidence, it was within the province of the jury to consider the evidence and testimony and assess its credibility. Thus, considering the totality of the evidence against him, we cannot conclude that the circumstantial evidence offered against Youngblood was insufficient for his conviction. This assignment of error is without merit.

Error Patent
We note that the record indicates an error patent. Louisiana C. Cr. P. art. 873, provides:
[i]f a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
*311 Here, the trial court imposed Youngblood's sentence immediately after the denial of his motion for post-verdict judgment of acquittal. There is no showing on the record that Youngblood waived the delay required by La. C. Cr. P. art. 873.
Absent a showing that a defendant was prejudiced by the failure to observe this delay, this court is not required to remand the case for re-sentencing. State v. Moossy, 40,566 (La.App.2d Cir.03/10/06), 924 So.2d 485. Here, the 24-hour delay was not so imperative as to require a re-sentencing where Youngblood failed to show that he suffered prejudice from the violation. See State v. White, 404 So.2d 1202 (La.1981). Furthermore, Youngblood does not even appeal his sentence. Louisiana C. Cr. P. art. 921 provides that "a judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused." Youngblood's substantial rights were not affected by the trial court's decision not to follow the 24-hour delay; therefore, the failure was a harmless error.

CONCLUSION
For the forgoing reasons, the conviction and sentence of Labontay Rene Youngblood are hereby affirmed.
AFFIRMED.