BROWN, Chief Judge.
 

 | defendant, James Dennis Wilson, was convicted of purse snatching, a violation of La. R.S. 14:65.1. He was sentenced to 20 years at hard labor, without the possibility of diminution of his sentence. For the following reasons, defendant’s conviction and sentence are affirmed.
 

 Facts
 

 On December 13, 2001, Mary Thompson was at the north end of the Wal-Mart parking lot in Bossier City, Louisiana, when a man grabbed her purse. Ms. Thompson attempted to hold on to her purse, but the assailant pulled so hard that it caused her to fall to the ground and hit her head. Ms. Thompson described the assailant as a black man with a goatee, wearing a knit cap and plaid shirt.
 

 Billy Massey and his wife heard Ms. Thompson scream. Billy Massey chased the assailant but stopped when he pointed at his gun. Mr. Massey then saw the man jump into the passenger side of a gold Ford Taurus which headed northbound on Airline Drive.
 

 Motorists Julie Griffith and her husband witnessed the Taurus driving off as well. They were able to catch up to the gold Ford Taurus and write down its license plate number. The investigating police officer, Detective James Cole, tracked the car to a Felicia Jenkins. Ms. Jenkins informed Det. Cole that her “cousin” Jeremy had taken her car to have a flat tire fixed, and that she did not know his last name.
 

 The victim’s purse contained money and her cell phone. Before the cell phone was deactivated there were a number, of calls to a residence that defendant stayed at in Los Angeles and to the residence of defendant’s |2cousin, Tequila Wilson. Det. Cole talked with Corporal Richard McGee, who had worked in the Bossier City Police Department’s gang division. Cpl. McGee
 
 *1155
 
 stated that he knew Tequila Wilson and defendant and that the victim’s description of the assailant matched that of defendant.
 

 Relying on the information supplied by Cpl. McGee, Det. Cole obtained a photograph of defendant and created a photo lineup to show Ms. Thompson. She was not immediately able to identify defendant in the photo array, but was able to eliminate all but two pictures, one of which was defendant’s. A couple of months later Ms. Thompson viewed the photo lineup again, and this time she positively identified defendant as the purse snatcher.
 

 In addition to Ms. Thompson, Det. Cole showed the lineup to Billy Massey. Like Ms. Thompson, Mr. Massey was not able to positively identify defendant in the photo lineup, but he too was able to narrow his choice down to two photos, one of which was defendant’s. Mr. Massey suggested to Det. Cole that he show the lineup to his wife, Sirena Massey, because she got a good look at the perpetrator. Mrs. Massey immediately picked defendant as the purse snatcher.
 

 A warrant was issued for defendant’s arrest in January 2002. Approximately two months later defendant was arrested in California by U.S. Marshals and transported back to Bossier Parish. Thereafter, defendant’s mother, Linda Willis, his cousin, Belinda Willis, and the mother of one of his children, Marion Howard, reported to Sergeant Gregory of the Bossier City Police Department that Jerry James Wilson (Jerry), defendant’s |suncle, told them that he, not defendant, had taken the purse. The women gave Sgt. Gregory the victim’s insurance card, which they said they got from Jerry.
 

 Det. Cole brought Jerry in for questioning. Jerry told Det. Cole that on the day of the purse snatching his friend, Darnell Sellers, drove his girlfriend’s gold Ford Taurus to the Wal-Mart. Jerry further stated that they parked on the south side of the store. Sellers went into the store while he stayed in the ear, and all of a sudden, Sellers hopped into the driver’s seat holding a women’s purse.
 

 Although noting in his police report that the story Jerry gave him did not match the events that transpired, Det. Cole still put together a photo lineup with a picture of Sellers in it and showed it to Ms. Thompson. Ms. Thompson did not recognize anyone in that lineup. It was at this time that she asked to see the first photo lineup again and positively identified defendant.
 

 On April 30, 2002, defendant was charged by bill of information for violation of La. R.S. 14:65.1, purse snatching. Discovery was satisfied in May 2002, and trial was set for September 23, 2002. Defendant, however, failed to appear for the trial and a bench warrant was issued for his arrest. Defendant was finally arrested and brought before the court in August 2008. Trial was set for January 26, 2009.
 

 On January 28, 2009, after a two-day trial, the jury found defendant guilty of purse snatching. After ordering a presen-tence investigation report (“PSI”) and hearing the victim’s statement, the trial court imposed the |4maximum sentence of 20 years imprisonment at hard labor with credit for time served, but without the possibility of the diminution of sentence for good behavior. Defendant now appeals.
 

 Discussion
 

 Sufficiency of the Evidence
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v.
 
 
 *1156
 

 Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Hearold,
 
 603 So.2d 731 (La.1992);
 
 State v. Bosley,
 
 29, 253 (La.App. 2d Cir.04/02/97), 691 So.2d 347,
 
 writ denied,
 
 97-1203 (La.10/17/97), 701 So.2d 1333.
 

 An appellate court’s authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation and does not extend to credibility determinations made by the trier of fact. La. Const. Art. 5, § 10(B);
 
 State v. Williams,
 
 448 So.2d 753 (La.App. 2d Cir. 1984). The reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La. App.2d Cir.02/25/09), 3 So.3d 685,
 
 writ denied,
 
 09-0725 (La.12/11/09), 23 So.3d 913;
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.05/09/07), 956 So.2d 758,
 
 writ denied,
 
 07-1209 (La.12/14/07), 970 So.2d 529.
 

 |sThe definition of purse snatching is set forth in La. R.S. 14:65.1(A), and it states:
 

 Purse snatching is the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon.
 

 Beyond proving the elements of the offense, it is necessary to prove the identity of the defendant as the person who committed the crime.
 
 State v. Hughes,
 
 05-0992 (La.11/29/06), 943 So.2d 1047.
 

 Positive identification by only one witness may be sufficient to support a defendant’s conviction.
 
 State v. Youngblood,
 
 41,976 (La.App.2d Cir.05/09/07), 957 So.2d 305, writ denied, 07-1226 (La.12/14/07), 970 So.2d 530;
 
 State v. Davis,
 
 27,961 (La.App.2d Cir.04/08/96), 672 So.2d 428,
 
 writ denied,
 
 97-0383 (La.10/31/97), 703 So.2d 12.
 

 Defendant contends that there was insufficient evidence to prove beyond a reasonable doubt that he was the person who committed the purse snatching since the state’s case consisted entirely of conflicting and inconsistent eyewitness testimony. Furthermore, defendant asserts, the testimony of his friends and family clearly shows that his uncle, Jerry Wilson, and Darnell Sellers were the culpable parties. Thus, based upon the testimony presented at trial, defendant posits that no rational trier of fact could reasonably conclude that he was the perpetrator.
 

 At trial the state put on testimony from the victim and two eyewitnesses, as well as the investigating officer. Although it was more than eight years since the crime was committed, and some portions of their 1,;testimony were slightly inconsistent with the original police report, all of the eyewitnesses testified that they were positive that defendant was the perpetrator. Det. Cole testified that Ms. Thompson’s cell phone records revealed that calls had been made to defendant’s cousin, Tequila Wilson, and to the home at which defendant was subsequently arrested in California. Furthermore, Det. Cole testified that Jerry Wilson’s “confession” got many of the details of the offense incorrect, i.e., on which side of the parking lot the car was parked, and into which side of the car the purse snatcher jumped.
 

 The defense presented testimony from family and friends of defendant who all claimed that defendant’s uncle, Jerry Wilson, who is now deceased, committed the theft. Defendant’s cousin, Tequila Wilson, testified that her Uncle Jerry, not defendant, called her residence from the victim’s cell phone. Marion Howard, the mother of one of defendant’s children, testified that Jerry told her, while she was with Belinda
 
 *1157
 
 Wilson and Linda Willis, that he was involved in the crime and that defendant did not commit the purse snatching. Defendant’s cousin, Belinda Wilson, and his mother, Linda Willis, both testified that they saw Jerry with the purse and that he told them that defendant had not been involved. Linda Willis also testified that she paid Jerry to turn himself into the police.
 

 The jury, as the trier of fact, was free to accept or reject, in whole or in part, the testimony of any witness. They were in the best position to observe the witnesses’ demeanor, weigh their testimony, and evaluate their credibility. Despite any inconsistencies in the eyewitnesses’ testimony if |7the jury believed defendant’s positive identification by any one witness, it would have been sufficient to support the conviction.
 
 See State v. Youngblood, supra.
 
 Accordingly, after reviewing the evidence in the light most favorable to the prosecution, we find that the jury could have reasonably concluded that defendant committed the purse snatching.
 

 Continuancellneffective Counsel
 

 The factual timeline particular to this case is significant to whether the trial court acted within its discretion in denying a continuance. The offense occurred on December 13, 2001. Following the commission of the crime, defendant fled to California. He was arrested by the U.S. Marshals and returned to Louisiana. On May 1, 2002, defendant, being represented by the IDB, waived arraignment and pled not guilty. Trial was set for September 23, 2002. On May 3, 2002, defendant made bond and was released from jail. Discovery was filed and answered. On the day set for trial, defendant failed to appear, his bond was forfeited, and a bench warrant was issued for his arrest. Defendant was not arrested and returned to the jurisdiction of the court until August 2008. Again the IDB was appointed to represent him. In September 2008, a motion to reduce bond was filed and denied, and in October 2008, a status conference was held, and trial was set for January 26, 2009. The IDB represented defendant at both proceedings.
 

 On the day trial was set to begin the trial court received a motion to enroll and a motion for continuance from defendant’s newly retained attorney, William G. Nader. At the hearing on the motions, Mr. Nader argued that a continuance was necessary since he had just been retained. |sThe trial court informed Mr. Nader that he could enroll, but that his motion for continuance was denied. Mr. Nader chose not to enroll.
 

 Carlos Prudhomme, defendant’s public defender, also requested a continuance. Mr. Prudhomme stated that he had only been assigned to the case two weeks prior and he too would need additional time to prepare his defense. Mr. Prudhomme, however, did inform the court that he had reviewed the IDB’s files from 2002 and believed he could adequately defend defendant. The trial court denied Mr. Prud-homme’s motion for continuance as well.
 

 This matter was pending for more than seven years. Defendant knew of the charges against him, but he delayed the administration of justice by absconding from the jurisdiction of the court. Defendant could have hired counsel of his own choosing at any time and turned himself in to the police. Nevertheless, defendant was arrested and brought back into the court’s jurisdiction, and for more than three months he sat idly while the IDB represented him. Then on the eve of trial defendant decided to retain Mr. Nader and to seek a continuance.
 

 A defendant not only has a constitutional right to counsel but should be
 
 *1158
 
 afforded a fair opportunity to secure counsel of his own choice.
 
 State v. Roberts,
 
 569 So.2d 671 (La.App. 2d Cir.1990). However, this right cannot be manipulated to obstruct the orderly procedure of the court and it must be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage of the proceedings.
 
 State v. Seiss,
 
 428 So.2d 444 (La.1983);
 
 State v. Leggett,
 
 363 So.2d 434 (La.1978). Absent a justifiable |<,basis there is no constitutional right to have new counsel appointed or enrolled on the day of trial if a continuance will also be required.
 
 Id.
 

 Considering the delay caused by defendant, we find no justifiable basis for the trial court to grant a continuance at that late stage of the proceeding so that defendant could switch counsel.
 

 Regarding the denial of Mr. Prud-homme’s request for a continuance, we note that the IDB had more than three months to prepare this case. Even though Mr. Prudhomme had only been assigned the case two weeks before trial, he stated that he had access to his predecessor’s files and believed that he could provide defendant with adequate representation and a fair trial. Accordingly, we find that the record does not indicate that the time allowed Mr. Prudhomme to prepare was so minimal that the need to show specific prejudice can be disregarded, and defendant has failed to raise specific instances of prejudice.
 
 See State v. Martin,
 
 93-0285 (La.10/17/94), 645 So.2d 190,
 
 cert. denied,
 
 515 U.S. 1105, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995);
 
 State v. Gipson,
 
 28,113 (La. App.2d Cir.06/26/96), 677 So.2d 544,
 
 writ denied,
 
 96-2303 (La.01/31/97) 687 So.2d 402.
 

 Next, we undertake defendant’s claim that he received ineffective assistance of counsel. As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930.
 
 State ex rel. Bailey v. City of West Monroe,
 
 418 So.2d 570 (La.1982);
 
 State v. Ellis,
 
 42,520 (La.App.2d Cir.09/26/07), 966 So.2d 139,
 
 unit denied,
 
 JiS07-2190 (La.04/04/08), 978 So.2d 325. However, when the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy.
 
 State v. Ratcliff,
 
 416 So.2d 528 (La.1982);
 
 Slate v. Willars,
 
 27,394 (La.App.2d Cir.09/27/95), 661 So.2d 673.
 

 A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, to establish that his attorney was ineffective, defendant must show that counsel’s performance was deficient. This requires a showing that counsel’s representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases.
 
 Stnckland, supra.
 
 Second, defendant must show that counsel’s deficient performance prejudiced his defense. Defendant must prove actual prejudice, and this requires a showing that but for counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different.
 
 Strickland, supra; State v. Pratt,
 
 26,862 (La.App.2d Cir.04/05/95), 653 So.2d 174,
 
 writ denied,
 
 95-1398 (La.11/03/95), 662 So.2d 9.
 

 A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice.
 
 Strickland, supra; State v. Jordan,
 
 35,643 (La.App.2d Cir.04/03/02), 813 So.2d 1123,
 
 *1159
 

 writ denied,
 
 02-1570 (La.05/30/03), 845 So.2d 1067.
 

 |nBased upon our review of the record, we find that there is insufficient evidence to make a ruling on this claim on appeal.
 

 Excessive Sentence
 

 Defendant contends that the sentence he received is harsh and disproportionate to the offense.
 

 The trial court is given a wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion.
 
 State v. Williams,
 
 03-3514 (La.12/13/04), 893 So.2d 7;
 
 State v. Thompson,
 
 02-0333 (La.04/09/03), 842 So.2d 330;
 
 State v. Hardy,
 
 39,233 (La.App.2d Cir.01/26/05), 892 So.2d 710.
 

 La. R.S. 14:65.1(B) states:
 

 Whoever commits the crime of purse snatching shall be imprisoned, with or without hard labor, for not less than two years and for not more than twenty years.
 

 Prior to imposing sentence the trial court reviewed the PSI and heard the victim’s statement concerning the continuing effects of the offense. The PSI outlined defendant’s extensive criminal history, including seven felony convictions, several of which took place after the instant offense, and a multitude of misdemeanors. Most of the crimes involved some type of theft and/or battery. The court also discussed defendant’s personal history and his admitted substance abuse. Considering the factors set forth in La. C. Cr. P. art. 894.1, the trial court found that defendant was in need of correctional treatment provided most effectively by commitment to an institution, that a lesser sentence would deprecate the seriousness of the lacrime, and that defendant’s criminal conduct was likely to recur. Based upon the aforementioned reasons, as well as Ms. Thompson’s statement, the trial court sentenced defendant to the maximum penalty of 20 years at hard labor.
 

 Although maximum sentences are typically reserved for the most serious offenders and offenses, we have held before that a trial court did not abuse its discretion by imposing the maximum sentence for purse snatching based primarily on defendant’s extensive criminal history and his failure to modify his behavior after multiple incarcerations and probations.
 
 See State v. Morgan,
 
 44,461 (La.App.2d Cir.08/19/09), 16 So.3d 1289. Considering defendant’s past behavior and the personal nature of the crime, we find that the sentence imposed by the trial court is not grossly disproportionate to the severity of the offense so as to shock the sense of justice.
 
 See State v. Smith,
 
 01-2574 (La.01/14/03), 839 So.2d 1;
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993).
 

 Conclusion
 

 For the foregoing reasons, the conviction and sentence of defendant are affirmed.