MOORE, J.
 

 h Defendant Shannon Dennis was convicted of second degree murder, a violation of La. R.S. 14:30.1, and sentenced to serve life imprisonment at hard labor without parole. He now appeals, urging three assignments of error. After review, we affirm.
 

 
 *970
 
 FACTS
 

 This homicide occurred on September 26, 2008, in the Allendale area of Shreveport in front of the Allen Avenue home of Ms. Lakesha Pouncey. The killing happened on a late Friday evening, sometime after 11:00 p.m. Ms. Pouncey explained that, as was usual for a Friday evening, a group of friends and acquaintances had gathered in her yard to drink and socialize. Several of these people 1 she knew only from the neighborhood, including a man named Tyrone Alexander, who parked his car in her yard.
 

 Tyrone brought the victim, Terry Wilson, to the gathering. Ms. Pouncey said that Wilson appeared to be in a good mood and was having a good time. Wilson and Tyrone were standing next to Tyrone’s car when they noticed a man across the street wearing a black hooded sweatshirt. Ms. Pouncey overheard both men say the name, “Shannon,” and then Wilson said, “He’s not going to do anything.”
 

 At that point, Tyrone went into Ms. Pouncey’s house and locked the front door behind him. Ms. Pouncey saw the hooded man approach Wilson while holding a rifle. He proceeded to shoot Wilson numerous times with the rifle, and then he walked away from the scene. Ms. Pouncey did not see the shooter’s face which was obscured by the hood.
 

 The victim’s teenaged daughter, Tiera Thomas, was standing in a | ¿front yard about four houses away when she witnessed the hooded man raise the rifle and shoot her father multiple times. She ran down the street to the scene of the shooting, but her father was beyond help and died as a result of the multiple gunshot wounds.
 

 Although Ms. Thomas did not know the name of the person who shot her father, she had seen him and another man walking by a few minutes prior to the shooting. She saw the face of the man wearing the black hoody as he walked by. She explained, “The only thing I had remembered was the cross in the center of his forehead.” She did not mention the cross in her interview with police, however.
 

 The police developed the defendant as a suspect based upon information provided from the defendant’s niece, Deanne Dennis. Ms. Dennis reported that on the morning after the homicide, while she was at her mother’s house, the defendant came over to visit, and he appeared to be scared, or nervous. Later that day, he gathered the family together and asked all of them, if anyone asked, to say that he had been at Ms. Dennis’ mother’s home on the previous evening. Ms. Dennis said that the defendant admitted killing the victim “a couple of days later.” She said:
 

 He was like, he saw Terry in the club. They got into it. He left the club. He came — he returned to the club. He said he seen Terry on the outside of the club and shot him. He said they will never know who did it, because it was dark, and I had a black hoody on.... He said they won’t find [the gun], because they drove a while and threw it away.
 

 Ms. Dennis said that the defendant told her that he shot Wilson because Wilson had beaten the defendant’s aunt. Police confirmed that the defendant had been present, earlier that evening, at a fight at a club about |stwo blocks away from the scene of the shooting.
 

 A few days after the shooting, the defendant asked Ms. Dennis to wash a pair of his blue jeans in cold water so “the blood and the gun residue will come out.” Ms. Dennis looked at the jeans and saw what she described as blood on the pants. Washing the pants removed the blood stain. The defendant stayed with Ms. Dennis a few days after the shooting, then
 
 *971
 
 fled to North Carolina on a bus, and then returned to Shreveport. Because she was troubled by what the defendant had told her about the shooting, Ms. Dennis went to the police with her information.
 

 The police prepared and showed the victim’s daughter a photo lineup of six persons, each of whom had similar facial characteristics. At least three of the men in the lineup, including the defendant, had a cross prominently tattooed on their forehead. The young woman identified the defendant as the man she saw walking by her house and who shot her father. At trial, Ms. Thomas repeatedly insisted that she saw the photo lineup “that same night,” referring to the night of the shooting, although, according to the police detective, she was shown the lineup at least one week, and perhaps three weeks, later.
 

 Police learned that the defendant had lived with a woman named Dana Fuller for several years. They interviewed Ms. Fuller, who told them that she had broken up with the defendant about a month before this incident and that he was not then living with her. However, Ms. Fuller said the defendant called her on the night of September 26 and asked if she could drive him to his sister’s house. She refused. However, on Sunday, the 14defendant called Fuller again and asked her to drive him to the store. She, along with three minor children, picked the defendant up at his sister’s house.
 

 The defendant had Ms. Fuller to drive him to Pierre Avenue in Allendale, only about two blocks from the scene of the murder. During the drive, the defendant verbally abused her by repeatedly calling her a “bitch” in front of the children. At Pierre Avenue, the defendant got out of the car, went into an alley and came back about ten minutes later. He then asked her to drive him toward the Kansas City Southern train yard. The defendant gave her specific instructions about where to drive. He instructed her to stop near a wooded area, where she let him out. He told her to drive down the road and return to pick him up. Ms. Fuller complied with the defendant’s instructions despite his continued verbal abuse; she sáid that she did not notice if the defendant had anything hidden in his clothing. After these events, Ms. Fuller drove the defendant to the store and then back to his sister’s house.
 

 The police asked Ms. Fuller to take them to the wooded area where the defendant left the car. When she did so, a search team located a rifle in the woods near the road. The rifle, still partially loaded, was forensically identified as the weapon used to murder the victim in this case. According to police, Ms. Fuller told them that it appeared to her that the defendant had been hiding something under his clothes prior to entering the woods.
 

 Police arrested the defendant in Shreveport at the home of one of his friends on November 12, 2008, pursuant to a warrant. The defendant hid in |sa closet and refused to cooperate. After a police K-9 bit the defendant several times, the defendant complied.
 

 The state presented this and other evidence at trial. The defendant did not testify but offered the testimony of his sister, Shatyna Dennis, who is Deanne Dennis’s mother. She testified that the defendant came to her house on the evening of the murder between 10:00 and 10:30 p.m., and spent the night. She said that he had been living there for a few weeks prior to that night. She said that the defendant never asked her to lie and say that he was there at that time.
 

 The jury found the defendant guilty as charged. The defendant filed post-trial motions for post verdict judgment of ac
 
 *972
 
 quitted (alleging insufficiency of the evidence) and new trial. The defendant’s motion for new trial, filed
 
 pro se,
 
 alleged various tidal errors and further alleged that new material evidence was available that was not discovered before or during trial.
 

 At the hearing on the motions, the defendant argued in his motion for new trial that his niece, Deanne Dennis, was “mentally retarded,” and had lied to the jury under pressure from the state. According to the defendant, the state had “put her (Ms. Dennis) under arrest” for three days at a Holiday Inn. He produced what he alleged was an affidavit from Deanne Dennis wherein she states that her testimony was fabricated due to “threats of having my kids taken away and going to jail.” She stated, “The Caddo District Attorney’s office forced me to testify on ... 9/15, and against my will. Shannon Dennis did not confess to me.” The defendant also had what |ñhe alleged were records from the Caddo Parish School Board showing that Deanne Dennis had “a third grade IQ level.”
 

 In response, the prosecutor informed the court that the state had paid for Ms. Dennis to be placed in the Holiday Inn — of her own free will — “because she was getting credible death threats from members of her family.” The defendant countered that Ms. Dennis was present in the courtroom and would like to testify about why, according to the defendant, she made false statements at trial.
 

 The trial court denied the defendant’s request to have Ms. Dennis testify and denied the defendant’s motion, stating:
 

 And your request to have the witness testify is denied. I believe the witness testified in at least two hearings and the trial, combined; however, I have considered the testimony that was presented at trial.... [B]oth motions for new trial and motion for post verdict judgment of acquittal and all related motions are hereby denied for those reasons stated based upon insufficient basis for granting of the motions.
 

 After denying the defendant’s post-trial motions, the trial judge imposed the mandatory life sentence. Dennis now appeals, raising three assignments of error.
 

 DISCUSSION
 

 We begin our review with the defendant’s third assignment of error in which he alleges that the evidence adduced at trial was not sufficient to convict him of second degree murder.
 

 When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing 17sufficiency first is that the accused may be entitled to an acquittal under
 
 Hudson v. Louisiana,
 
 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt.
 
 State v. Hearold,
 
 603 So.2d 731 (La.1992);
 
 State v. Bosley,
 
 29,253 (La.App. 2 Cir. 4/2/97), 691 So.2d 347,
 
 writ denied,
 
 97-1203 (La.10/17/97), 701 So.2d 1333.
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia, supra; State v. Cummings,
 
 95-1377 (La.2/28/96), 668 So.2d 1132;
 
 State v. Henson,
 
 38,820 (La.App. 2 Cir. 9/22/04), 882
 
 *973
 
 So.2d 670. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Henson, supra.
 
 A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Gilliam,
 
 36,118 (La.App. 2 Cir. 8/30/02), 827 So.2d 508,
 
 writ denied,
 
 2002-3090 (La.11/14/03), 858 So.2d 422.
 

 In support of this assignment, the defendant cites a variety of | ¡^discrepancies in the testimony of the witnesses that, he claims, fatally undermines the jury’s decision to credit their testimony. For example, in her testimony, Ms. Thomas related that she viewed a photo lineup including the defendant on the night of the shooting; as police testimony showed, her recollection of the date of this event was inaccurate. Next, Ms. Fuller’s testimony differed in some ways from previous statements, most pointedly with her recollection of whether the defendant appeared to be hiding something during their trip to the wooded area where the gun was recovered. She told police that the defendant did appear to be hiding something, but testified that this was not so. In addition, the defendant urges that Ms. Fuller “had considerable acrimony” toward him, and the transcript shows her recollection that the defendant cursed her during their trip. Finally, the defendant points out a variety of discrepancies between the testimony of his niece, Ms. Deanne Dennis, and her statements to police, particularly with regard to her recitation of the timing of events. Further, as will be discussed below, the defendant argues that Ms. Dennis is developmentally disabled or mentally retarded, so her testimony was entitled to less weight.
 

 In this case, there is no doubt that this offense was a second degree murder. However, beyond proving the elements of the offense, the state must prove that the defendant was the person who committed the crime.
 
 State v. Hughes,
 
 2005-0992 (La.11/29/06), 943 So.2d 1047. Positive identification by only one witness may be sufficient to support a defendant’s conviction.
 
 State v. Youngblood,
 
 41,976 (La.App. 2 Cir. 5/09/07), 957 So.2d 305,
 
 writ denied,
 
 2007-1226 (La.12/14/07), 970 So.2d 530;
 
 State v. Davis,
 
 27,961 (La.App. 2 Cir. 4/08/96), 672 So.2d 428, writ
 
 denied,
 
 97-0383 (La.10/31/97), 703 So.2d 12. In cases involving a defendant’s claim that he was not the person who committed the crime, the state must negate any reasonable probability of misidentification in order to carry its burden of proof.
 
 State v. Powell,
 
 27,959 (La.App. 2 Cir. 4/12/96), 677 So.2d 1008,
 
 writ denied,
 
 96-1807 (La.2/21/97), 688 So.2d 520.
 

 In the instant case, the state carried its burden of negating any reasonable probability of misidentification. The evidence showed that the defendant was present at a fight in a bar very near the scene of the shooting earlier that evening. Subsequently, and close in time and place to the offense, Ms. Thomas saw the defendant walking down the street. She identified him by the distinctive cross tattoo on his forehead, and unhesitatingly picked him out of a lineup that included at least two other people who also had crosses tattooed on their forehead.
 

 Both Ms. Thomas and Ms. Pouncey described the shooter’s black hoody, and Ms. Thomas said that the defendant was wearing that same garment. Further, the defendant’s ex-girlfriend took the defendant to the isolated wooded area where the murder weapon was found. Finally, the
 
 *974
 
 defendant’s niece testified that the defendant confessed to her that he was the person who shot the victim, and she consistently stated that the defendant had given her his bloody jeans to wash.
 

 Although both trial and appellate counsel for defendant ably pointed out the discrepancies in the witnesses’ testimony and statements to police, |innone of those discrepancies dispel the overwhelming evidence that the defendant was the perpetrator of this homicide.
 

 We conclude that the evidence was sufficient to sustain the conviction and, therefore, this assignment of error is without merit.
 

 By his first assignment of error, the defendant contends that it was error for the trial court to deny his motions to quash because the superseding indictment was not filed within the delays allowed by La. C. Cr. P. art. 701(b), nor was it concurred in by nine members of the jury as required by La. C. Cr. P. art. 388.
 

 The matters of record disclose the following:
 

 A Caddo Parish grand jury indicted Shannon Lamar Dennis on January 22, 2009, for the second degree murder of Terry Wilson committed on September 26, 2008. However, the indictment was not signed by the grand jury foreperson. The defendant filed a
 
 pro se
 
 motion to quash the indictment on March 9, 2009, alleging that it was legally insufficient.
 

 The state filed a superseding indictment on July 8, 2009, charging Dennis with the second degree murder of Mr. Wilson. This indictment was signed by the grand jury foreperson. Although the signature itself is not dated, this second superseding indictment is dated on the front page of the indictment, “January 22, 2009,” the same date as the first indictment.
 

 On July 8, 2009, the trial court heard the defendant’s motion to quash, which was argued by his attorney. Noticing that the state had filed the superseding indictment in proper form, the court denied the defendant’s motion to quash. At that same hearing, the defendant was arraigned on the | usuperseding indictment. The court accepted the defendant’s not guilty plea to the superseding indictment, reserving his right to contest the timeliness of that indictment.
 

 On August 1, 2009, the defendant filed a second written
 
 pro se
 
 motion to quash. This time he argued that the time limitation for the institution of prosecution had elapsed under La. C. Cr. P. 701(b), because he had been arrested on November 21, 2008. His counsel expressly refused to adopt the motion at the hearing on December 15, 2009. The court denied the motion, and the defendant applied for a supervisory writ from that ruling. Citing U.R.C.A. Rule 4-5, this court denied that application because the defendant failed to include a copy of his motion or the trial court’s ruling.
 

 On June 24, 2010, the defendant filed a third
 
 pro se
 
 motion to quash. In this motion, the defendant argued that the superseding indictment was not concurred in by nine members of the grand jury, and he claimed that fewer than nine members of the grand jury were present when the superseding indictment was issued.
 

 The trial court heard the motion on September 13, 2010. Again, it was not adopted by defendant’s attorney.
 

 In opposition to the motion, the prosecutor contended that the signature on the indictment was, in fact, the signature of the grand jury foreperson and offered to present testimony that there was a quorum when the grand jury returned the indictment. The trial court denied the defendant’s motion, finding the defendant’s
 
 *975
 
 allegation that nine grand jurors did not concur in the indictment to be baseless.
 

 | lgTrial commenced two days later, and, on September 18, 2010, a unanimous petit jury convicted the defendant as charged. After the court denied the defendant’s motions for post verdict judgment of acquittal and new trial, the court sentenced Dennis to the mandatory term of life imprisonment at hard labor without parole.
 

 In this appeal, the defendant contends that his conviction must be reversed because neither of the charging instruments were properly executed. He contends that the first indictment was fatally defective because it was not signed by the grand jury foreperson, and the second indictment was invalid because it was untimely and does not evidence that nine members of the grand jury concurred in the charge.
 

 First, we consider the argument that the indictment was untimely. There are several relevant statutes regarding the formal and material requisites of an indictment by a grand jury and the grounds to quash:
 

 La. C. Cr. P. art. 383 provides, in part:
 

 An indictment is a written accusation of crime made by a grand jury. It must be concurred in by not less than nine of the grand jurors, indorsed “a true bill,” and the indorsement must be signed by the foreman....
 

 La. C. Cr. P. art. 487 provides, in part:
 

 A. An indictment that charges an offense in accordance with the provisions of this Title shall not be invalid or insufficient because of any defect or imperfection in, or omission of, any matter of form only, or because of any miswriting, misspelling, or improper English, or because of the use of any sign, symbol, figure, or abbreviation, or because any similar defect, imperfection, omission, or uncertainty exists therein. The court may at any time cause the indictment to be amended in respect to any such formal defect, imperfection, omission, or uncertainty.
 

 11sLa. C. Cr. P. art. 533 provides, in part:
 

 A motion to quash an indictment by a grand jury may also be based on one or more of the following grounds:
 

 [[Image here]]
 

 (4) Less than nine grand jurors were present when the indictment was found.
 

 (5) The indictment was not indorsed “a true bill,” or the endorsement was not signed by the foreman of the grand jury.
 

 La. C. Cr. P. art. 521 provides:
 

 Pretrial motions shall be made or filed within fifteen days after arraignment, unless a different time is provided by law or fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate.
 

 Upon written motion at any time and a showing of good cause, the court shall allow additional time to file pretrial motions.
 

 A motion to quash is the proper procedural vehicle for a defendant to allege that the time limitation for the initiation of prosecution has expired. La. C. Cr. P. art. 532(7). A motion to quash on these grounds may be filed of right at any time before commencement of the trial. La. C. Cr. P. art. 535(4). The responsibility of proving timely prosecution rests with the state.
 
 State v. Freeman,
 
 37,312 (La.App. 2 Cir. 7/16/03), 850 So.2d 1088;
 
 State v. Oliver,
 
 34,292 (La.App. 2 Cir. 5/09/01), 786 So.2d 317.
 

 The phrase “institution of prosecution” is defined as “the finding of an indictment ... which is designed to serve as the basis of a trial.” La. C. Cr. P. art. 934(7);
 
 State v. Freeman, supra; State v. Oliver, supra.
 
 The state is permitted to dismiss an indictment and institute new proceed
 
 *976
 
 ings if it shows the dismissal was not for the purpose of avoiding the time limitation for | ^commencement of trial as established by Art. 578.
 
 State v. Freeman, supra; State v. Wells,
 
 459 So.2d 648 (La.App. 4 Cir.1984). Article 578 provides that no trial shall be commenced for a noncapital felony case after two years from the date of institution of prosecution.
 

 In
 
 State v. Freeman,
 
 we held that a superseding indictment filed for the legitimate purpose of correcting a possible illegal indictment due to a defective grand jury selection process constituted a valid reason for filing the superseding indictment and was not an attempt to circumvent the time limitations.
 

 In this case, the state acknowledged that the original indictment was unsigned by the grand jury foreman. Prior to a ruling by the court on the defendant’s first motion to quash challenging the indictment on that ground, the prosecutor filed a superseding indictment that was signed by the grand jury foreman. The prosecutor did not change the date of the indictment, so, clearly the superseding indictment was filed for the legitimate purpose of correcting a possible illegal indictment and not in an attempt to circumvent the time limitations for commencement of trial. In this instance, trial commenced on September 18, 2010, well within the two-year time limitation of Art. 578. Thus, the defendant has not shown that he was harmed by the filing of the superseding indictment.
 

 Even if we were to find that the court erred in failing to grant the second motion to quash on grounds that the superseding indictment was untimely filed, the defendant’s remedy would have been simply release from his bail obligation. La. C. Cr. P. art. 538(3);
 
 see also,
 
 La. C. Cr. P. art. liS701(B)(2). In any event, although there is no showing of error, after conviction, any error regarding the defendant’s second motion to quash is harmless beyond a reasonable doubt.
 

 The defendant’s third motion to quash was filed almost a year after his arraignment on the superseding indictment and is clearly untimely. Except in certain circumstances, a challenge to an indictment must be made within 15 days after arraignment. La. C. Cr. P. art. 535. An allegation that the second indictment was concurred in by fewer than nine grand jurors does not fall within the ambit of La. C. Cr. P. art. 535(A) or (B).
 
 See, e.g., State v. Sears,
 
 298 So.2d 814 (La.1974), overruled on other grounds by
 
 State v. Lovett,
 
 345 So.2d 1139 (La.1977);
 
 State v. Mack,
 
 43,206 (La.App. 2 Cir. 4/23/08), 981 So.2d 185. Despite the untimeliness of the defendant’s motion, the trial court opted to entertain the defendant’s argument on the motion because it was made prior to the verdict.
 

 Whereas at oral argument, defense counsel argued that it was incumbent upon the state to prove that the superseding indictment was concurred in by the same members of the original grand jury, it has been held that one moving to quash indictment because of defects or irregularities in constitution of grand jury has the burden of proving allegations upon which the motion is based.
 
 State v. Pierre,
 
 198 La. 619, 3 So.2d 895 (La.1941),
 
 cert. denied,
 
 314 U.S. 676, 62 S.Ct. 186, 86 L.Ed. 541 (1941). Apart from conjecture engendered by the same date on the face of the second indictment, the defendant offered no evidence in support of his argument that the requisite number of grand jurors did not concur in the |, (¡issuance of the charging instrument. Although the prosecutor offered to put on testimony to support the state’s assertion that the proper number of grand jurors did concur in the indictment, the trial judge did not find it necessary to pursue that inquiry further.
 
 *977
 
 Even if the defendant’s third motion to quash were timely filed, under the dubious theory that the indictment was a nullity, the defendant offered nothing to support his allegation that the indictment was deficient
 
 ab initio.
 
 He clearly was not prejudiced by the procedure employed; the defendant was fully apprised of the charge against him and had the benefit of two arraignments.
 

 This assignment of error is without merit.
 

 By his second assignment of error, the defendant alleges that the trial court erred in denying him the right to present a defense at the hearing on the motion for new trial.
 

 The defendant argues that the trial court should have granted his motion for new trial based upon the apparent recantation by Deanne Dennis of her trial testimony implicating the defendant in this crime. He further argues that the trial court’s handling of his motion was improper because the judge “refused to admit or even consider the evidence and refused to let Deanne Dennis testify.”
 

 The •written materials do not form a part of the appellate record because they were not proffered at the hearing; counsel asserts that the trial court did not permit the records to be proffered. Although this may be an overstatement, nevertheless, the trial court did clearly refuse to hear testimony from Deanne Dennis.
 

 117The defendant’s argument is that a new trial is warranted under La. C. Cr. P. art. 851(3), because Ms. Dennis’ recantation is newly discovered evidence. Regardless of whether that is the proper section under which this argument may be raised, there is no showing that the trial court erred in its ruling. As the supreme court stated in
 
 State v. Clayton,
 
 427 So.2d 827 (La.1982):
 

 This court has consistently held that the trial judge is accorded considerable discretion in evaluating the impact of newly discovered evidence on the verdict and its reliability, and its ruling will not be disturbed on appeal absent a clear showing of abuse of discretion.
 

 When considering a motion for new trial based on newly discovered evidence, the test to be employed is not whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a different result than the verdict reached.
 

 This court has further consistently held that recantations of trial testimony should be looked upon with the utmost suspicion. Further, a recantation at a new trial is a confession to perjury which destroys the credibility of the witness.
 

 (Citations omitted.)
 

 In this case, Deanne Dennis testified at trial about facts that are, with the exception of a few details, generally consistent with what she told police during the investigation of this offense. She related to police that the defendant had asked her and other family members to lie about his whereabouts on the night of the murder, that the defendant had actually confessed to the murder, and that she had washed a pair of the defendant’s bloody jeans to eliminate that damning evidence against him.
 

 As the state pointed out at the trial, the prosecutors paid for this witness to be housed in a hotel for her own safety due to “credible” death |isthreats she received from her own family as a result of her cooperation with police and prosecutors. The circumstances of Ms. Dennis’s recantation were thus highly suspect, and the trial court did not abuse its considerable
 
 *978
 
 discretion in refusing to conduct further inquiry into the questionable new evidence.
 

 This assignment of error is without merit.
 

 CONCLUSION
 

 For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
 

 CONVICTION AND SENTENCE AFFIRMED.