McCALLUM, J.
The defendant, John Cartwright ("Cartwright"), was convicted by a jury of stalking, third offense, in violation of La. R.S. 14:40.2 and was sentenced to serve 20 years at hard labor. A motion to reconsider sentence was denied. Cartwright now appeals and challenges the sufficiency of the evidence and the state's disclosure to the jury of his prior stalking convictions. For the reasons stated hereinafter, we affirm.
FACTS
Cartwright has been twice previously convicted of stalking. The victim in this case, Sammie Byrd ("Byrd"), has worked in law enforcement in Madison Parish for decades. Byrd was not the victim in either of Cartwright's prior stalking convictions. The bill of information, as amended, alleges that Cartwright stalked Byrd between January 1, 2015 and April 5, 2015.
The victim and defendant each reside in Tallulah, Louisiana. Cartwright's stalking of Byrd began with Cartwright disseminating throughout the town statements that Byrd was out to kill him, and that he intended to arm himself with a shotgun to protect himself against Byrd. The evidence established that Cartwright made such statements to then Attorney General Buddy Caldwell, Robert Miracle, Gerald Odom, and numerous other people in Tallulah. Out of concern for Byrd and his family, Robert Miracle and Buddy Caldwell *1048 took measures to warn Byrd that Cartwright had been making these statements. Robert Miracle's testimony indicated that he reported Cartwright's statement to Byrd prior to April 5, 2015.
Additionally, between January 1, 2015 and April 5, 2015, Cartwright wrote several letters to the captain of Louisiana State Police Troop F in Monroe, Louisiana. In these letters, Cartwright accused Byrd of putting the barrel of a pistol in Byrd's ex-wife's mouth while he was "crazed on cocaine," and of bringing Chad Ezell to First Baptist Church to antagonize Cartwright.[1] During that same time period, in a letter to the Tallulah Police Department, Cartwright accused Byrd of threatening him at a Kentucky Fried Chicken by saying, "I'm going to get you. Get ready Cartwright because we're coming for you. We're going to get you Cartwright." In his trial testimony, Byrd unequivocally denied ever threatening Cartwright.
The culminating event occurred on April 5, 2015, during a church service at the First Baptist Church in Tallulah. Byrd was serving as an usher, and when he reached the pew on which Cartwright was sitting, Cartwright threatened him, saying to Byrd, "I'm coming for you. I'm gonna get you." Madison Parish Sheriff Larry Cox witnessed this event. He heard Cartwright speaking but not well enough to understand what he was saying. Sheriff Cox did, however, testify that upon hearing Cartwright's words, Sammy Byrd turned "as red as an apple."
The only issues briefed on this appeal are: (1) the state's presentation to the jury of evidence of Cartwright's two previous stalking convictions; and (2) the sufficiency of the evidence.
DISCUSSION
Sufficiency of the evidence
When a criminal defendant appeals the sufficiency of the evidence and other alleged errors, the reviewing court should first determine the sufficiency of the evidence. The accused is entitled to an acquittal if a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979) ; State v. Cooley , 51,895 (La. App. 2 Cir. 5/23/18), 247 So. 3d 1159 ; State v. Dennis , 46,471 (La. App. 2 Cir. 9/21/11), 72 So.3d 968, writ denied , 11-2365 (La. 5/18/12), 89 So.3d 1189.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the *1049 light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia , supra ; State v. Tate , 01-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed. 2d 248 (2004) ; State v. Carter , 42,894 (La. App. 2 Cir. 1/9/08), 974 So.2d 181, writ denied , 08-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford , 05-0477 (La. 2/22/06), 922 So.2d 517 ; State v. Dotie , 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, writ denied , 09-0310 (La. 11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Eason , 43,788 (La. App. 2 Cir. 2/25/09), 3 So.3d 685, writ denied , 09-0725 (La. 12/11/09), 23 So.3d 913.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is so viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton , 436 So.2d 471 (La. 1983) ; State v. Speed , 43,786 (La. App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied , 09-0372 (La. 11/6/09), 21 So.3d 299.
La. R.S. 14:40.2, as it was written at the time of the offense, provides in relevant part:
(A) Stalking is the intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. Stalking shall include but not be limited to the intentional and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal or behaviorally implied threats of death, bodily injury, sexual assault, kidnaping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted.
(B)(5) Upon a third or subsequent conviction, the offender shall be imprisoned with or without hard labor for not less that [sic] ten years and not more than forty years and may be fined not more than five thousand dollars, or both.
C. For the purposes of this Section, the following words shall have the following meanings:
(C)(1) "Harassing" means the repeated pattern of verbal communications or nonverbal behavior without invitation which includes but is not limited to making telephone calls, transmitting electronic mail, sending messages via a third party, or sending letters or pictures.
(2) "Pattern of conduct" means a series of acts over a period of time, however short, evidencing an intent to inflict a continuity of emotional distress upon the person. Constitutionally protected activity is not included within the meaning of pattern of conduct.
We find the evidence sufficient to support Cartwright's third offense stalking conviction under La. R.S. 14:40.2. Cartwright's *1050 dissemination throughout the town of his intention to arm himself with a shotgun against Sammy Byrd and false statements[2] to the effect that that Sammy Byrd had been threatening him constituted harassment of Sammy Byrd. Upon hearing these statements from Cartwright, Attorney General Buddy Caldwell was so alarmed and concerned for Byrd's well-being that he relayed a warning to Byrd. Immediately after leaving the barbershop where Cartwright made the statements to him, Buddy Caldwell located Sheriff Larry Cox and asked that he caution Byrd. Additionally, Robert Miracle, a friend of Cartwright, testified that he felt a duty to warn Byrd after hearing Cartwright's statements. Cartwright's direct threat to Byrd in church made Byrd turn "as red as an apple," and Byrd testified that he was concerned by these threats. As mentioned, Sheriff Cox was an eyewitness to Byrd's physical reaction. Cartwright's harassment of Byrd was intentional, repeated, and would cause a reasonable person to feel alarmed or suffer emotional distress. Accordingly, we hold that the evidence was sufficient to support Cartwright's conviction of third offense stalking.
Other crimes evidence
The State provided the defendant with Prieur notice regarding the prior convictions evidence in advance of trial. Defense counsel stipulated to the fact of the prior stalking convictions without reserving an objection to the use of the prior convictions for La. C.E. art. 404(B) (" article 404(B)") purposes. Thereupon, defense counsel indicated that the only remaining Prieur matter was a different instance of Cartwright's prior conduct, which the trial judge ruled inadmissible.
Cartwright's two prior stalking convictions were mentioned in the direct examination of all or nearly all of the state's nine witnesses. However, the details of those offenses (other than the dates) were not disclosed to the jury through this testimony.[3] Defense counsel did make an objection to the mention of the prior convictions on the grounds of "improper character evidence." However, this was done only after failing to object to the first nine (or more) times that the prior convictions were mentioned throughout the trial. Similarly, defense counsel did not request special limiting instructions at any point when the prior convictions were mentioned, and the trial judge gave no such instructions. The final jury charge did include a limiting instruction regarding the prior convictions.
Prior stalking convictions are essential elements of third offense stalking. Defense counsel cites State v. Montgomery , 250 La. 326, 195 So.2d 285 (La. 1967), as support for the proposition that Cartwright's prior stalking convictions were not essential elements of the instant charge of third offense stalking, but instead, became elements to be proved at sentencing. Montgomery does not support that proposition. Rather, Montgomery requires that prior offenses must be alleged with some particularity in the charging instrument when the penal statute under which a defendant is charged enhances punishment based on those prior offenses.
Contrary to his argument, Cartwright's prior stalking convictions were essential *1051 elements of the charge of stalking, third offense, under La. R. S. 14:40.2. In State v. Ball , 99-0428 (La. 11/30/99), 756 So.2d 275, 279, the defendant was charged with possession of a firearm by a convicted felon, and the Louisiana Supreme Court stated that "telling the jury [that] the defendant is a prior felon ... is absolutely essential ... and must be covered either by the State's proof or by defendant's stipulation." Ball controls in this case. Cartwright's prior stalking convictions were essential elements of the charge of third offense stalking and had to be established at the guilt phase of the trial. This argument is without merit.
Stipulation to prior convictions. Cartwright further argues that because he stipulated to the two prior stalking convictions, the State was precluded from introducing evidence on that point. This assertion is directly contrary to the Louisiana Supreme Court's jurisprudence. Ball , supra, held that, in a prosecution for possession of a firearm by convicted felon, the State could introduce evidence of the name and nature of the defendant's prior conviction even though the defendant had offered to stipulate that he had been convicted of a prior felony. That holding controls in this case.
Admissibility of prior convictions vis-à-vis article 404(B). Defense counsel argues, in effect, that the State used the prior stalking convictions to show Cartwright's "pattern of conduct" under article 404(B), and the prior convictions were not admissible for that purpose. We note that defense counsel reserved no objection in stipulating to the prior convictions at the Prieur hearing. In fact, after making the unqualified stipulation, he indicated to the trial judge that no Prieur proceedings needed to be had in regard to the prior convictions. Most importantly, he allowed the state to mention the prior convictions at least nine times throughout the trial before he finally objected. It is well settled that the failure to timely urge an objection to the introduction of inadmissible prior crimes evidence waives that objection.
In State v. Johnson, 94-1379 (La. 11/27/95), 664 So.2d 94, 102, the Louisiana Supreme Court held that the "introduction of inadmissible other crimes evidence results in a trial error."[4] We further note that "review of criminal trial errors on appeal has long been governed by the contemporaneous objection rule found in La. C. Cr. P. art. 841." State v. Cummings, 46,038 (La. App. 2 Cir. 1/26/11), 57 So.3d 499, 507, writ denied , 2011-0341 (La. 6/17/11), 63 So.3d 1037, citing State v. Thomas , 27,507 (La. App. 2 Cir. 12/6/95), 665 So.2d 629, writ denied , 96-0119 (La. 4/8/96), 671 So.2d 333. In relevant part, La. C. Cr. P. art. 841(A) states: "an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." His repeated failure to timely object to the State's first nine (or more) references, in its case in chief, to Cartwright's prior convictions, resulted in the defendant's waiving of any objection he had to the admissibility of the fact of those convictions as relates to any La. C. Cr. P. art. 404(B) considerations.
Additionally, we find that, even assuming there was an error in allowing the state to reference the prior convictions at least nine times, such was a harmless error. Because Cartwright stipulated to the prior convictions, the jury was inevitably going to be instructed that they were *1052 to regard the prior stalking convictions as conclusively proven. With these facts in mind, we find that the verdict was surely not attributable to the state's multiple references to the prior convictions during direct examination of its witnesses.
Limiting instructions. We initially note that the trial court gave a limiting instruction regarding Cartwright's prior convictions in the final jury charge,[5] but gave no such (special) limiting instructions during the presentation of evidence. The defense suggests this was reversible error. We disagree.
Relying on State v. Green, 493 So.2d 588 (La. 1986), the defendant argues that the mention of his prior stalking convictions to the jury, without contemporaneous limiting instructions, violated his due process rights. In Green, the defendant was convicted by a jury of third offense theft. The two previous theft convictions were alleged in the indictment. Id. The defendant objected "to the reading of the allegations of previous crimes in the indictment to the jury," but the trial court overruled that objection. Thereupon, the defendant in Green stipulated that he was convicted of the previous thefts as alleged in the indictment, but reserved his right to maintain the objection on appeal. Afterward, the stipulation was read to the jury. However, the defendant did not request a limiting instruction or object to the trial court's failure to give one. Nonetheless, the Louisiana Supreme Court held that the trial court's failure to give a limiting instruction regarding the previous convictions was a violation of due process and therefore a reversible error. Id.
Green's holding that failure to give a limiting instruction in connection with evidence of prior convictions per se requires reversal has been overruled. In Johnson, supra, the Louisiana Supreme Court held that the "introduction of inadmissible other crimes evidence results in a trial error subject to harmless error analysis. Insofar as State v. Brown, supra , and other cases have held that the admission of inadmissible other crimes evidence is per se prejudicial and not subject to harmless error review, they are overruled." Johnson explained the distinction between "trial errors" and "structural errors":
Trial error occurs during the presentation of the case to the trier of fact and may be quantitatively assessed in the context of the other evidence to determine whether its admission at trial is harmless beyond a reasonable doubt. A structural error is one which affects the framework within which the trial proceeds. Structural defects include the complete denial of counsel, adjudication by a biased judge; exclusion of members of defendant's race from a grand jury; the right to self-representation at trial; the right to a public trial; and the right to a jury verdict of guilt beyond a reasonable doubt.
Id. at 100-101. (Internal citations omitted).
Because the admission of inadmissible prior crimes evidence is a trial error rather than a structural error, the failure to give a limiting instruction regarding prior crimes evidence is also a trial error and thus subject to harmless error review. It does not result in automatic reversal. Furthermore, "[a] party may not assign as error the...failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error."
*1053 La. C. Cr. P. Art. 801(C). Failure to make a timely objection to a trial error constitutes a waiver of that objection, and "a defendant is limited to the grounds for objection articulated at trial." State v. Colby, 51, 907 (La. App. 2 Cir. 5/30/18), 2018 WL 2423079, 244 So. 3d 1260.
Cartwright's counsel failed to request any special limiting instruction regarding the prior crimes evidence. Accordingly, Cartwright's entitlement to a limiting instruction was thereby waived, and this assignment of error is without merit.
Pro se assignments of error
Cartwright makes numerous claims of ineffective assistance of counsel, which primarily involve counsel's not subpoenaing witnesses and not allowing Cartwright to testify. Cartwright also alleges misconduct or bias by the trial judge, tampering with the transcript of the preliminary hearing, and "jury stacking" by the clerk of court. The defense did not file a motion to recuse the trial judge, nor any motions related to alleged tampering with the transcript of the preliminary hearing or the alleged "jury stacking" by the clerk of court.
A claim for ineffective assistance of counsel is more properly raised in an application for post-conviction relief. This forum enables the judge to conduct, if necessary, a full evidentiary hearing on the matter. State v. Carter , 2010-0614 (La. 1/24/12), 84 So.3d 499.
We decline to address Cartwright's ineffective assistance of counsel claims. The record does not contain sufficient evidence to allow us to adjudicate them. He may raise them via an application for post-conviction relief ("PCR") in the District Court in accordance with law. The record is inadequate to for us to address Cartwright's other contentions as well, and we accordingly decline to do so. Cartwright may pursue these claims via PCR application to the extent allowed by law.
CONCLUSION
John Cartwright's conviction and sentence for third offense stalking are AFFIRMED.

In the letters, Cartwright also made numerous allegations of major crimes, conspiracies, and corruption committed by state and local law enforcement as well as other government officials. These included a Sheriff in Louisiana being a "dope pusher"; multiple child molestations being covered up on orders of a former Louisiana governor; a prostitute in Tallulah spreading AIDS to many prominent figures of that town, and the whole matter being covered up; certain members of local law enforcement bartering pain pills "in return for sex"; another law enforcement officer being caught breaking into houses and stealing gas from school buses; that Cartwright was illegally jailed so his brother and a person referred to as "Cootie" could knock down walls in Cartwright's house and steal things hidden there; and that the Sheriff's Department stole over $9000 from behind the board in Cartwright's closet.
Additionally, Cartwright alleged massive child pornography conspiracies in Europe, and that the governments of those countries were profiting from these activities. Cartwright suggested "the Sheriff in Arizona to send deputies to Denmark and other European countries involved and talk to the police departments there and plead with them to do something."

In finding Cartwright guilty, the jury implicitly credited Byrd's testimony that he had not threatened Cartwright, and implicitly rejected Cartwright's accusations against Byrd.

Exhibit S-1 includes the court minutes from Cartwright's September 9, 2010, stalking conviction; those minutes additionally disclose the name of the victim, and the conditions of Cartwright's related supervised probation. Exhibit S-1 was admitted without objection.

Johnson further indicated that the introduction of inadmissible other crimes evidence is subject to harmless error analysis.

Specifically, the trial judge stated: "[r]emember, the accused is only on trial for the offense charged. You may not find him guilty of this offense which is Stalking, Third Offense solely because he was convicted of two previous charges of stalking."